**Manuel ROMERO, Appellant,**

v.

**Roy M. HORLOCK, d/b/a the Horlock Company, Appellee.**

**No. 47.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

March 6, 1968.

Rehearing Denied March 27, 1968.

David J. Nagle, Houston, for appellant.

F. Walter Conrad, Jr., Robert J. Malinak, Baker, Botts, Shepherd & Coates, T. Turner Pope, Kamp, Laswell & Howard, Houston, for appellee.

Pearson Grimes, Houston; and Butler, Binion, Rice, Cook & Knapp, Houston, for intervenor.

TUNKS, Chief Justice.

In 1963, the defendant, Roy M. Horlock, appellee here, undertook to construct some apartments or townhouses on a tract of land owned by him in Houston, Texas. In the construction the defendant did not use a general contractor, but, rather, entered into various independent contracts for the performance of particular portions of the construction. In one of those contracts, Gulf Plastering Company, agreed to do the plastering work upon the buildings. Other contracts were made by the defendant which covered carpenter work, brick work, sheet metal work, roofing, etc.

The plaintiff was an employee of Gulf Plastering Company and as such, was, on the date in question, on the defendant's premises doing plaster work on the chimneys on the roof of one of the two-story buildings being constructed by the defendant. At the end of the day he began his descent from the roof and as he did so, fell, sustaining the injuries for which he here sues.

In the contract between the defendant and Gulf Plastering Company is the following provision: "When needed by him subcontractor (Gulf Plastering Company) shall furnish the following facilities for his own use or pay his pro-rated share of same for the entire construction period: temporary toilets, job sheds, storage and warehouse spaces, temporary water, power, heat, gas and telephone, drinking water, scaffoldings, barricades, night watchmen, shoring and underpining, vertical transportations, hoisting equipment and any other service of facility applicable to his particular scope of the work."

In the performance of its contract, Gulf Plastering Company built a scaffold at the

end of the building complex. This scaffold was used by the employees of the plastering company in hoisting material and equipment to the roof of the buildings and also was used as a means of ascent and descent. The evidence showed and the jury found that this scaffold was a "reasonable means of access to and from the roof." The evidence also showed and the jury found that an extension ladder had been placed against the back of the building on which plaintiff was working to be used by the employees of Gulf Plastering Company to descent from the roof.

Plaintiff, however, did not use either of those means of descent. There was another carpenter's ladder leaning against the side of the building. It had been left there by some carpenters (employees of another independent contractor working on the building). It was this carpenter's ladder that plaintiff undertook to use in getting down. This ladder was not quite long enough to reach the roof level—its top was a little below the level of the roof. As plaintiff started to put his foot on it to descend, he steadied himself by holding on to some of the brick work that extended above the roof level. The brick work gave way causing plaintiff to fall to the ground. The plaintiff sustained, among other injuries, a broken ankle. The jury found his damages to be in the amount of $23,250.00.

The brick wall on which plaintiff leaned in stepping onto the ladder was not a structural wall designed to bear a load. It was a veneer wall and its principal purpose was decorative. It was made of Mexican brick which was soft and easily broken. There was about a one-inch space between the wall of the building and the brick veneer. The brick veneer was not attached to the wall of the building at the time in question. The top three rows of bricks were cantilevered out so that the top row extended about four or more inches from the verticle line of the other bricks. There was no evidence that either the bricks or the mortar used to lay them was defective in any manner. The veneer, particularly the three top rows

which were extended out from the verticle, was not designed, nor intended to bear any load at all.

The plaintiff sued the property owner, the appellee Horlock, and the brick contractor who built the wall, R. C. Henderson, alleging that they were guilty of negligence which proximately caused his fall and injuries. Before the trial was completed, the plaintiff dismissed as against the brick contractor. The allegations of negligence as against the defendant, Horlock, may be summarized as follows: The defendant failed to provide reasonably safe means of getting to and from the work areas. The defendant failed to establish work rules concerning use of scaffolds and ladders. The defendant failed to warn plaintiff of the dangerous condition of the brick veneer. The defendant also alleged that he intended to invoke the doctrine of res ipsa loquitur and that the defendant breached a warranty to plaintiff that the brick would support plaintiff's weight.

The trial court submitted to the jury a special issue as follows: "Do you find from a preponderance of the evidence that the defendant, Roy M. Horlock, his agents and employees failed to provide plaintiff a safe means of getting from the work area?"

The jury answered, "We do not."

Other issues as to negligence and proximate cause were predicated on an affirmative answer to that issue and were, therefore, not answered by the jury. No other issues concerning the defendant's negligence were submitted to the jury. On a number of issues relating to contributory negligence of the plaintiff, the jury found that there was no such contributory negligence. The trial court rendered judgment on the verdict for the defendant, and the plaintiff has appealed.

■ The appellant's first points of error are to the effect that there is either no evidence or insufficient evidence to support the jury's finding on his primary negligence issue. It is appellant's argument, in

support of these points, that it was Gulf Plastering Company, an independent contractor, who furnished the safe means of descent—the scaffold and the extension ladder—and that therefore the jury's finding that defendant and his agents and employees provided them is without support in the evidence.

We overrule those points of error. The scaffold was built and the extension ladder furnished by the plastering company in accordance with the terms of its contract with the defendant. The defendant "provided" the means of descent whether he personally installed them or caused them to be installed through the medium of an independent contractor. The use of the words "agents and employees" in the special issues submitted, was not intended to and did not have the restrictive meaning suggested by appellant's argument.

The plaintiff requested the submission of twenty-two other special issues which were refused by the trial court. The relation of those requested issues to the grounds of liability alleged in plaintiff's petition is not entirely clear; but we have assumed that, in those requested issues, he properly presented to the court a request for the submission of those grounds of liability alleged by him. Those allegations of liability are summarized above.

One allegation of negligence was that the defendant failed to warn plaintiff that the bricks might come loose if he used them to balance himself in stepping onto the ladder he used. The trial court refused to submit issues relating to that allegation. That refusal was assigned as error.

■■■ There is no question that the plaintiff was an invitee upon the premises of the defendant. Since the plaintiff was an invitee on defendant's premises, the defendant was under a duty to exercise ordinary care to protect the plaintiff from any dangers on the premises that were not open and obvious or to warn him of those dan-

gers. Halepeska v. Callihan Interests, Inc. (Tex.Sup.Ct.), 371 S.W.2d 368; Grimshaw Co. v. Zoller, Tex.Civ.App., 396 S.W.2d 477, writ ref., n. r. e. The plaintiff, however, was an invitee as the employee of Gulf Plastering Company. The defendant, in discharging his duty to warn those invitees who were such employees, was not required to go to each employee and personally tell him of the hidden danger, if any, represented by the insecure bricks at the top of the veneer wall. That alternative duty to warn was fully discharged when the character of the brick structure was brought to the attention of plaintiff's employers. In Delhi-Taylor Oil Corp v. Henry, 416 S.W.2d 390 (Tex.Sup.Ct.), it was said: "While an owner owes a duty to employees of an independent contractor to take reasonable precautions to protect them from hidden dangers on the premises or to warn them thereof, an adequate warning to or full knowledge by the independent contractor of the dangers should and will be held to discharge the landowner's alternative duty to warn the employees."

If there was a hidden danger from which plaintiff sustained his injuries, it was in fact that the bricks at the top of the wall were not fixed securely. Photographs introduced in evidence show the position in which the bricks were laid. The bricks were laid in the usual manner, lengthwise, flat and with one row directly on top of the other—except 'for the top three rows of bricks. In the third from the top row the bricks were laid at an angle, rather than lengthwise. In that row a corner of each brick extended outward for a distance of two or three inches beyond the perpendicular line of the bricks below. In the second from the top row the bricks were laid lengthwise of the wall, but their edges, too, extended outward from the perpendicular line of the wall approximately one inch farther than the outside corners of the bricks in the row below. It is apparent that there is comparatively little mortar binding the bot-

tom of the bricks in this row. The bricks in the top row are laid still differently. They are laid crosswise of the length of the wall, on their edges and extending out from the perpendicular line of the wall two or three inches further than the bricks in the row below. With such an arrangement it might be argued that it was obvious that the bricks were not securely fixed. We do not, however, base our holding on such a conclusion. But the manner in which the bricks were laid is relevant in evaluating the evidence to see if the fact of the hidden danger, if any, was known to or brought to the attention of plaintiff's employers or supervisors.

Braxton Lewis, the supervisor of R. C. Henderson, the masonry contractor doing the brick work on the buildings, testified that he cautioned the plaster crew about knocking the brick loose and told them, "if they got on that brick work, they are liable to come tumbling down." It is not shown, however, that the plaintiff, personally, heard that warning.

Mr. Robert C. Underhill, the owner of Gulf Plastering Company, the plaintiff's employer, testified that a hose was used to pump plaster up onto the roof and that he had been told that dragging the hose across the brick at the top of the wall would knock them down and that he had learned that some of the brick had been knocked loose in that way.

Obie Tidmore, Jr., Underhill's foreman and the plaintiff's supervisor, gave similar testimony clearly indicating that he knew of the instability of the top of the brick. He testified, in fact, that he told the men of his crew of that condition and "not to use the ledge anymore."

 While the evidence was contradictory as to whether the plaintiff actually knew of the dangerous condition, if any, it is uncontradicted that his employer and foreman knew of it. Under those circumstances, on the authority of Delhi-Taylor Oil Corp. v. Henry, supra, we told that the trial court properly refused the plaintiff's requested special issues on failure to warn.

The evidence did not raise any issues to be submitted to the jury under the other pleadings of the plaintiff. Plaintiff's allegation of negligence in failing to establish work rules is evidentiary only. Generally, the failure to establish work rules is not, of itself, negligence separate and apart from the failure to warn. It is what is done or not done regardless of rules that may be negligence.

Further, we think it is obvious that neither the doctrine of res ipsa loquitur nor liability based on warranty is applicable here.

The judgment of the trial court is affirmed.